[Civ. No. 5979. First Appellate District, Division Two.—December 14, 1927.]

JAMES H. STUART, Respondent, v. WILLIAM CHAPMAN, etc., Appellant.

Charles Lantz, Winslow P. Hyatt, Frederick C. Huber and Samuel M. Garroway for Appellant.

John F. Poole for Respondent.

STURTEVANT, J.—Action to quiet title. If the tax deed held by the plaintiff is invalid by reason of any of

the irregularities mentioned by the defendant the judgment should be reversed, otherwise it should be affirmed.

■ 1. The defendant calls to our attention the fact that the auditor did not annex his affidavit to the assessment-book of 1913 which contained the assessment on which the tax deed was based. He claims that the omission was fatal and he cites Political Code,' section 3732, and *Moyer* v. *Wilson,* 166 Cal. 261 [135 Pac. 1125]. The sale involved in this action took place July 2, 1914. The validity of the sale is to be determined by the law as it stood on the latter date. (*Teralta Land etc. Co.* v. *Shaffer,* 116 Cal. 518 [58 Am. St. Rep. 194, 48 Pac. 613].) At that time the curative act, chapter 24 of the Statutes of 1915, was in force. If the alleged defect existed it was cured by the express terms of that statute if the statute did not "apply new and more onerous conditions to the right to redeem than those which existed when the sale was made." (*Teralta Land etc. Co.* v. *Shaffer, supra.*) A most careful reading of the act of 1915 does not disclose that it imposed any "new conditions." It merely waived an irregularity that did not affect the substantial rights of the parties. (*Baird* v. *Monroe,* 150 Cal. 560, 567 [89 Pac. 352].) Nor may it correctly be said that when on June 4, 1915 (Stats. 1915, p. 1170), the legislature amended Political Code, section 3732, it did by implication repeal the above-mentioned curative act. Repeals by implication are not favored. The inconsistency between two acts must be of such a degree that the two cannot be given force and effect before there is a repeal by implication. (*Bateman* v. *Colgan,* 111 Cal. 580, 586 [44 Pac. 238].) It may not be said, therefore, that the code section as amended repealed the curative act.

■ The defendant quotes and emphasizes the first sentence of the act in question and argues that the plaintiff should have introduced proof to the effect that the public officials had performed their duties as mentioned in that sentence. The proof was not necessary. (Code Civ. Proc., sec. 1963, subd. 15.)

■ 2. Because all of the insertions of the delinquent notice were not made prior to June 5, 1913, the defendant claims that the notice was not given in time. (Pol. Code, secs. 3764, 3766, and 3767.) The statute contains no words to that effect and no reason whatever appears why the

statute should be so construed. The notice was inserted on June 5th, 12th, and 19th, and the sale was held July 2d. The statute was followed in every respect.

3. Because the auditor did not attach his affidavit to the corrected assessment-roll of 1913 the defendant argues that the auditor had no authority to compute the tax, the assessor had no authority to levy the tax, there was no tax to become a lien, there was no sale to the state, the state acquired no title, and the property in question should not have been listed on the delinquent list of 1919. He cites and relies on *Leonard* v. *Jaffray,* 175 Cal. 371 [165 Pac. 956]. The case cited is not in point. The value, as a factor in this action, of the failure of the auditor to execute and attach his affidavit has been considered above.

4. The plaintiff testified that before he commenced this action he called on Moyer, the grantor of Chapman, and asked him if he would sign a quitclaim deed and that Moyer replied he could not do so and directed the plaintiff to commence an action to quiet title. The defendant claims that the plaintiff is therefore estopped. The record presents no questions of estoppel.

5. It is next claimed that the tax deed was void because the tax collector did not file in the office of the county clerk a copy of the publication of the delinquent list. (Pol. Code, sec. 3769.) The statute does not say the effect of such omission invalidates the deed. On the other hand, the statute provides that plaintiff's deed is conclusive evidence that a copy of the publication was filed. (Pol. Code, sec. 3787.) That such is the meaning of that section was held in *Haaren* v. *High,* 97 Cal. 445, 447 [32 Pac. 518].

6. The last point presented is that in printing the delinquent list the publication "did not set forth the amount due for penalties," and, therefore, the sale was void. (*Bussenius* v. *Warden,* 71 Cal. App. 717, 722 [236 Pac. 371].) In making the point we do not understand the defendant to claim that the delinquent list should show separately the amount of the delinquent tax, the amount of the cost, the amount of the interest and the amount of the penalties. But it should show "the amount of taxes, penalties and costs." (Pol. Code, sec. 3764.) The vice in the contention rests in this, the record does not disclose facts on which

the defendants can predicate their point of law. The record contains some oral testimony and some deleted written instruments. The oral testimony touching on the subject was given by the witness Pfeiffer, a deputy tax collector. He testified: "That the delinquent tax list of the County of Los Angeles of taxes delinquent in 1913, was published on June 5th, 12th and 19th, 1914. The sale for delinquent taxes of 1913 was held July 2, 1914, the date fixed in the notice of delinquent tax sale for that year. The notice of sale does not contain a detailed statement of all delinquent taxes, penalties, costs, interest, and expenses up to the date of such sale, as to Lot 9, Block F, The Palms, but does state what purports to be an amount as follows." Then follow the deleted instruments. Of the publications for the year 1913–1914 the record purports to contain (1) the notice of sale (folios 99–103), and (2) the affidavit of the tax collector (folios 104–105). In so far as the foregoing instruments are concerned, it is not claimed that either of them contained a misstatement. Immediately following the affidavit above mentioned appears an "Addenda Notice" (folios 105–111). That notice does not purport to be of the proceedings of 1914, but does purport to be of the proceedings had in 1919. It contains no false recital. It is signed "W. O. Welch, Tax Collector of Los Angeles County, California." Then follows immediately without any separation the following:

"The property to be sold and the subject of the notice, is situated in the County of Los Angeles, State of California, particularly described as follows, to-wit:

"No. 2151, The Palms, as per Bk. 21, p. 43 of Misc. Records, Lot 9, Block F, assessed to David B. Moyer. Lowest acceptable bid $2.53.

"Dollars and cents

"Public notice is hereby given that the figures opposite, following and last after each description of property in the foregoing list, were intended to and do represent respectively in dollars and cents, or in dollars and cents, as the case may be, *the amount due for taxes and costs* in the manner as follows, . . .

"W. O. WELCH,
"Tax Collector, Los Angeles County, Calif "

The document just quoted does contain a misstatement, to wit, it recites that the sale will be for "the amount due for taxes and costs" instead of "the amount of taxes, penalties, and costs due, . . . " But the record does not disclose whether the document is a part of the tax record of 1913–1914 or of the tax record of 1918–1919. It does not appear to be a document required by any statute. On its face it appears to be a collateral instrument explaining the abbreviations used in some other instrument—possibly the delinquent list. Assuming that it was a part of the publication of the year 1918–1919, the other papers which went to make up that publication are not set forth and we are unable to ascertain from the record the entire contents of the publication. We may not assume that the document last mentioned was the entire publication—it does not purport to be the notice of sale or the delinquent list itself. On the other hand, assuming it was a part of the delinquent publication of 1913–1914, then it follows that it was attached to the notice of sale which is printed in the transcript and which was not subject to the attack made by the appellant. Still assuming the document to be a part of the publication of 1913–1914 and that it was attached to the notice of sale and that it contained a misstatement, to wit, that the sale would be for "taxes and costs" instead of "the amount of taxes, penalties and costs due," the error was not fatal. This is so because one is bound to read the entire publication and may not stop with reading only a portion. In the case of *Best* v. *Wohlford*, 153 Cal. 17 [94 Pac. 98], the court was considering a delinquent notice. One part of the notice was ambiguous and in a different place the notice on the same subject was quite clear. Speaking for the court, Mr. Justice Angellotti, at page 22, said: "We do not see how the owner of lot 4 in block 178 of the Rancho Rincon del Diablo could have failed to know therefrom exactly what property was referred to, and if this be true, the description was sufficient. In addition, the notice specified, immediately after the specification of the date upon which the sale would be made, that certain 'abbreviations throughout the advertisement are used as follows: . . . "R. R. del Diablo" for Rancho Rincon del Diablo.' We know of no reason why the taxpayer was not required to observe this part of the notice,

which left no room for conjecture or surmise as to the meaning of the abbreviation. The notice sufficiently complied with the law.'' Immediately following the document last mentioned the transcript sets forth the testimony of the witness Longworth, a deputy county recorder. That portion of the record contains nothing which tends to change the facts stated above.

The defendants cite and rely on *Scott* v. *Beck* (Cal.), 259 Pac. 933. A rehearing has been granted in that case. However, the facts are not the same as the facts in this case and a ruling will be of little help. In the case at bar there was a sale for delinquent taxes for the year 1913. The questions involving that sale have been discussed. Furthermore, the record discloses that other taxes were delinquent and not paid and that ''plaintiff paid taxes, penalties and costs in pursuit of the state's title'' in the sum of $59.21. Nothing to the contrary appearing, it must be assumed that at least a part of said sum was for the taxes levied for the year 1918–1919, that such taxes became delinquent, that the property was on the delinquent list for the year last named, and that the delinquent list for the year 1918–1919 was by the tax collector and auditor so arranged that ''said publication shall designate in some particular manner the property contained in said list which was sold to the state five years previous (that is, in 1914). . . .'' (Pol. Code, sec. 3764.)

The defendant has not shown that the tax deed which the plaintiff holds is invalid in any particular or for any reason. It follows that the judgment should be affirmed, and it is so ordered.

Nourse, J., and Koford, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1928.

All the Justices concurred.