[Sac. No. 4261. In Bank.—October 7, 1929.]

LESLIE T. ALWARD, Appellant, v. C. G. JOHNSON, Treasurer of the State of California, Respondent.

Simeon E. Sheffey and Sherman Blood for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

Pillsbury, Madison & Sutro, *Amicus Curiae*.

WASTE, C. J.—Plaintiff was engaged in the business of operating an automotive stage line over the public highways between Redding and Big Bar, California, carrying passengers, freight, the United States mail and parcels post. He was, therefore, subject to a tax on gross receipts from the carriage of persons and property, in lieu of all other taxes and licenses. (Const., art. XIII, sec. 15.) He filed with the State Board of Equalization a statement showing gross receipts from the operation of his transportation line for the year 1926 amounting to $60,986.47. On the basis of that statement, and pursuant to the Constitution, *supra*, the board levied a tax of $2,978.78 for the year 1927. Appellant paid the first installment under protest, and brought this action to recover $1,057.16, the portion of the tax assessed against the revenue derived from the carriage of the United

States mails and parcels post. A demurrer interposed to his third amended complaint was sustained without leave to amend, and judgment was entered accordingly, from which the plaintiff has appealed.

Appellant attempts to raise questions concerning the method of taxation adopted by the people of the state in 1910, by which the system of state and local taxation was separated, which were long ago settled against his contentions. He first asserts that the actual market value of the various units of property used in the operation of his stage line is not more than $15,000, and that prior to the adoption of section 15, *supra,* the *ad valorem* tax on his property never exceeded $350 per annum. He therefore claims that, as applied to his property, the prescribed method of taxation results in an arbitrary, excessive and confiscatory tax, violative of the Fourteenth Amendment to the federal Constitution. He further contends that, inasmuch as the tax is not based upon the true valuation of his property, it ceases to be a tax on property and becomes a direct levy upon appellant's contract to carry mails for the United States government, and is, therefore, a tax on a federal agency. The question as to whether or not the taxes levied for state purposes by section 14 of article XIII, upon the gross receipts of the utilities there enumerated, are taxes upon property has several times been considered by this court, and in each instance it has been declared to be essentially a property tax. (*Pullman* v. *Richardson,* 185 Cal. 484, 487 [197 Pac. 346], affirmed in 261 U. S. 330, 339 [67 L. Ed. 682, 43 Sup. Ct. Rep. 366, 368], and cases there cited.) The tax required by section 15 of article XIII of the Constitution on the gross receipts of appellant's business is the identical kind of a tax required by section 14, and is, like the other, essentially a property tax. It is neither arbitrary, excessive or confiscatory to the extent of rendering it violative of the due process clause of the Fourteenth Amendment to the federal Constitution.

The second main contention of appellant is that he carries the United States mails and parcels post under a contract with the Postoffice Department of the United States Government, and for that purpose is an agency of the government and, as such, immune from state taxation. He cites cases in which the courts have denied the state the right

to collect taxes upon transactions in which the federal government is directly engaged (e. g., *Panhandle Oil Co.* v. *Mississippi*, 277 U. S. 218 [56 A. L. R. 583, 72 L. Ed. 857, 48 Sup. Ct. Rep. 451]). But there is a very material difference between such transactions and one in which a private citizen, whose only relation to the government is that of contract, is under obligation to furnish service in accordance with that contract. ''Mere contracts between private corporations and the United States do not necessarily render the former essential government agencies and confer freedom from state control.'' (*Metcalf and Eddy* v. *Mitchell,* 269 U. S. 514 [70 L. Ed. 384, 46 Sup. Ct. Rep. 172, 174, 175].) In that case, involving a tax on the income of consulting engineers in state service, the court, speaking through Mr. Justice Stone, said: '' . . . not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his property is an instrumentality of government within the meaning of the rule. (Citing cases.) . . .

'' 'It seems to us extravagant to say that an independent private corporation for gain created by a State, is exempt from state taxation either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time.' ''

In *Union Pac. R. R. Co.* v. *Peniston,* 18 Wall. (85 U. S. 5) 33 [21 L. Ed. 787, see, also, Rose's U. S. Notes], it was claimed that the state of Nebraska had illegally imposed a tax upon the property of the railroad company, the contention being that the property was exempt from state taxation by virtue of the incorporation of the company by the United States as a means for the performance of certain public duties of the government, enjoined and authorized by the Constitution. In considering the contention, the court said: ''It may, therefore, be considered as settled that no constitutional implications prohibit a State tax upon the property of an agent of the government merely because it is the property of such an agent. A contrary doctrine would greatly embarrass the States in the collection of their necessary revenue without any corresponding advantage to the United States. A very large proportion of the property within the States is

employed in execution of the powers of the government. It belongs to governmental agents, and it is not only used, but it is necessary for their agencies. United States mails, troops, and munitions of war are carried upon almost every railroad. Telegraph lines are employed in the national service. . . . They are the property of natural persons, or of corporations, who are instruments or agents of the general government, and they are the hands by which the objects of the government are attained. Were they exempt from liability to contribute to the revenue of the States it is manifest the State governments would be paralyzed.''

In his closing brief, appellant, for the first time, raises the point that section 15 of article XIII, *supra*, applies only to common carriers. He contends that the general definition of a common carrier, i. e., ''one who undertakes, for hire or reward, to transport the goods of such as choose to employ him from place to place'' (10 Cor. Jur. 39), is not applicable to one engaged in carrying the United States mails. In his third amended complaint filed in this action appellant alleged that he was ''engaged in the business of operating an automotive stage line known as the Redding-Weaverville Stage Line, between Redding, California, and Big Bar, California . . . ,'' and that the property used in the operation of the line was ''devoted chiefly to the carrying of United States mails and parcels post.'' An examination of his report filed with the board of equalization shows that of the $60,986.47 reported as earned during the year 1926, $18,609.74 was revenue derived from the carriage of passengers and freight. There is nothing in appellant's complaint, or in the briefs filed in his behalf, which would indicate that he did not undertake, for hire or reward, to transport from place to place passengers and the goods of such as chose to employ him. His stage line was operated over the public highways, between fixed termini, and over a regular route. It is true his property was largely employed in the service of the United States; but that does not alter the fact that it was also devoted to public service, and, as was said in *Metcalf and Eddy* v. *Mitchell*, *supra*, it would seem extravagant to say ''that an independent private corporation for gain created by a state, is exempt from state taxation . . . in . . . its property, because it is employed by the United States, even if the work for which it is employed is important

and takes much of its time.'' While appellant's complaint is directed only to the portion of the tax based on the receipts from the carriage of the mails, the tax, as before pointed out, is a tax on the operative property ''used in the business of transportation of persons or property,'' without distinction as to the nature of the property transported.

The judgment is affirmed.

Curtis, J., Preston, J., Richards, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.

All the Justices concurred.